Filed 9/16/24  P. v. Parker CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D084261 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. FSB22000411) |
| JONATHAN GERALD PARKER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, Alexander R. Martinez, Judge.  Conditionally reversed and remanded with instructions.

Richard Schwartzberg, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Heather B. Arambarri, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Jonathan Gerald Parker guilty of two counts of conspiring to possess a controlled substance for sale (Pen. Code,[1] § 182, subd. (a)(1); counts 2 and 4), possessing methamphetamine for sale (Health & Saf. Code,

---

[1]    Undesignated statutory references are to the Penal Code.

§ 11378; count 5), and possessing heroin for sale (Health & Saf. Code, § 11351; count 6). In a bifurcated proceeding, the jury also found Parker guilty of street terrorism (Pen. Code, § 186.22, subd. (a); count 7) and found true the allegation he acted for the benefit of a criminal street gang with respect to counts 2, 4, 5, and 6. The court found true certain aggravating factors, sentenced him to an aggregate term of 10 years and four months in prison, and imposed various fines and fees, including a $9,000 restitution fine under section 1202.4, subdivision (b).

Parker requests we independently review the trial court's in camera proceedings regarding a wiretap search warrant to determine whether the court properly denied his motion to quash and traverse the search warrant. He also challenges the restitution fine as unconstitutionally excessive. We conclude the restitution fine is not unconstitutionally excessive but find the court committed legal error when it denied Parker's motion to quash or traverse the search warrant. Accordingly, we conditionally reverse the judgment and remand for further proceedings in accordance with this opinion.

FACTUAL AND PROCEDURAL BACKGROUND[2]

In June 2021, the San Bernardino Police Department contacted the California Department of Justice regarding violent crimes and drug dealing committed near unlawful gaming establishments. These establishments, located in and around the City of San Bernardino, were known as "net cafes," and frequented by criminal street gang members and gang associates. In July 2021, these agencies initiated a joint investigation into the crimes,

---

[2] Our factual summary is limited to those facts needed to resolve the issues raised on appeal and to provide relevant context.

focusing on the possible involvement of two criminal street gangs, West Side Verdugo and the Mexican Mafia.

The agencies spent weeks preparing a search warrant affidavit to authorize wiretaps on several investigation targets. Parker, a Middle Side criminal street gang member and known West Side Verdugo associate, was a named target. Law enforcement believed Parker ran or managed three net cafes. In August 2021, a judge reviewed the wiretap search warrant affidavit and signed the warrant, authorizing wiretaps on multiple cell phone numbers, including Parker's. The judge then sealed the affidavit.

## DISCUSSION

A. *The Court Committed Legal Error in Conducting Its In Camera Review*

### 1. Background

Parker moved to quash and traverse the wiretap search warrant and suppress the data collected from the search. He requested the trial court conduct an in camera hearing under *People v. Hobbs* (1994) 7 Cal.4th 948 (*Hobbs*) to determine whether: (1) the affidavit is facially sufficient; (2) information should be disclosed because it would not reveal the informant's identity; (3) whether additional information is necessary to allow the court to undertake a complete review of the affidavit; (4) whether disclosure is necessary to ensure he has an opportunity to challenge the warrant; and (5) whether the informant may be a material witness to his guilt or innocence. The People responded to the motion and requested the court follow the *Hobbs* procedure.

At the hearing on the motion, the trial court found Parker had standing to challenge the sufficiency of the wiretap warrant and had established sufficient cause to justify an in camera review. Following an in camera hearing, the trial court denied the motion to quash and traverse the warrant,

finding sufficient probable cause for issuing the warrant and sealing the affidavit to protect the identity of the informant or informants. It found no inconsistencies or inaccuracies between the assertions of the informant or informants and other confirming actions taken by the affiant. It also found no reasonable possibility the informant or informants would provide any evidence or items which could lead to exculpatory evidence on Parker's behalf.

　2. Analysis

Parker requests we independently review the sealed affidavit to determine whether the trial court complied with the mandates of *Hobbs, supra,* 7 Cal.4th 948. The People do not object to Parker's request.[3]

Section 1534, subdivision (a) requires that the contents of a search warrant, including the supporting affidavit, "be open to the public as a judicial record" once the warrant is executed and returned. Nonetheless, recognizing the need to protect confidential informants, in *Hobbs, supra,* 7 Cal.4th 948, the California Supreme Court set forth the procedures for trial courts to follow to determine whether some portion, or the entirety of a search warrant affidavit, may remain sealed. (*Id.* at pp. 971–975.) "The procedures outlined in *Hobbs* to protect privileged information apply not only to search warrants, but also to wiretap authorization orders." (*People v. Sedillo* (2015) 235 Cal.App.4th 1037, 1054 (*Sedillo*).) "The *Hobbs* procedures provide that the wiretap's supporting documentation may validly be withheld from disclosure only to the extent necessary to protect official information or an informant's identity." (*Ibid.*)

---

[3]　On our own motion, we augmented the record on appeal with a sealed copy of the wiretap search warrant affidavit.

To decide a defendant's motion to quash or traverse a warrant the trial court reviews the relevant materials in camera. (*People v. Galland* (2008) 45 Cal.4th 354, 364 (*Galland*).) The court first determines whether sufficient grounds exist for keeping the informant's identity confidential. (*Ibid.*) If the court rules the informant's identity should remain confidential, it then decides whether it is necessary to seal the affidavit (or any portion thereof) to avoid revealing the informant's identity. (*Ibid.*)

If the trial court determines the affidavit was properly sealed, it then decides " 'whether, under the "totality of the circumstances" presented in the search warrant affidavit . . . there was "a fair probability" that contraband or evidence of a crime would be found in the place searched pursuant to the warrant' (if the defendant has moved to quash the warrant) or 'whether the defendant's general allegations of material misrepresentations or omissions are supported by the public and sealed portions of the search warrant affidavit, including any testimony offered at the in camera hearing' (if the defendant has moved to traverse the warrant)." (*Galland*, *supra*, 45 Cal.4th at p. 364.) On appeal, we review the trial court's rulings for abuse of discretion. (*Hobbs*, *supra*, 7 Cal.4th at p. 976.)

After reviewing the entire record, including the sealed search warrant affidavit presented to the trial court in camera and the oral in camera proceedings, we conclude the court erred by not proceeding with the in camera review in the manner directed by *Hobbs*, *supra*, 7 Cal.4th 948. The court fulfilled the first step of the in camera review process by finding "sufficient grounds exist for maintaining the confidentiality of the informant's identity." (*Id.* at p. 972.) This finding should have then led the court to the second step: "determining whether the entirety of the affidavit or any major

5

portion thereof is properly sealed, i.e., whether the extent of the sealing is necessary to avoid revealing the informant's identity." (*Ibid.*)

There is no indication in the record showing the court considered the scope of the sealing or fully engaged in the second step that all portions of the search warrant affidavit, including the wiretap's supporting documentation, required the entirety of the document be sealed, rather than redacting any sensitive information. This legal error constitutes an abuse of discretion and requires we remand the matter to allow the trial court to fulfill the second step of the analysis, before proceeding to the third step of the analysis. (*People v. Superior Court (Humberto S.)* (2008) 43 Cal.4th 737, 746 [trial court abuses discretion when ruling rests on legal error]; see *PSC Geothermal Services Co. v. Superior Court* (1994) 25 Cal.App.4th 1697, 1714–1715 [trial court erred in ordering search warrant affidavit to remain sealed on ground that disclosure would adversely affect criminal investigation, where nothing in record suggested that court either "undertook the two-stage analysis of confidentiality and public interest necessary to support the sealing of the affidavit" or "considered the possibility of redacting the affidavit and sealing only that portion which might be found . . . to be official information"].)

Accordingly, we conditionally reverse the judgment and remand the matter to the trial court with directions to conduct a new in camera hearing. On remand, depending on the outcome of the court's determination regarding sealing, the court should allow Parker to supplement his motions or, if necessary, proceed to a further hearing. (*Hobbs*, *supra*, 7 Cal.4th at pp. 974–975; *People v. Heslington* (2011) 195 Cal.App.4th 947, 957–959.)

B. *The Restitution Fine Is Not Unconstitutionally Excessive*

After the trial court imposed a $9,000 restitution fine (§ 1202.4, subd. (b)) and stayed a $9,000 parole revocation restitution fine (§ 1202.45), Parker objected to the fines as excessive. He contends the court violated his federal and state constitutional rights by imposing an excessive fine close to the maximum $10,000 fine without any reasons or explanation regarding how it calculated the fines. He requests the fines be reversed and the matter remanded for a new calculation.

A restitution fine is intended to punish a defendant (*People v. Hanson* (2000) 23 Cal.4th 355, 361), and should be evaluated under the excessive fines clause of the Eighth Amendment of the federal Constitution and article I, section 17 of the California Constitution. (*People v. Kopp* (2019) 38 Cal.App.5th 47, 96–97, review granted Nov. 13, 2019, S257844 (*Kopp*).)[4] " 'The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish.' [Citation.] '[A] punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense.' [Citation.] To determine whether a fine is excessive in violation of the Eighth Amendment, we consider: '(1) the defendant's culpability; (2) the relationship between the harm and the penalty; (3) the penalties imposed in similar statutes; and (4) the defendant's ability to pay.' " (*People v. Pack-Ramirez* (2020) 56 Cal.App.5th 851, 861–862 (*Pack-Ramirez*).) "[E]xpress findings by the court as to the factors bearing on the amount of the fine are not required." (*People v. Avila* (2009) 46 Cal.4th 680, 729.) We review the excessiveness of a

---

4    We cite *Kopp* in accordance with California Rules of Court, rule 8.1115(e)(1).

7

fine challenged under the Eighth Amendment de novo. (*People v. Aviles* (2019) 39 Cal.App.5th 1055, 1072.)

A trial court is statutorily authorized to impose a restitution fine in any amount between $300 and $10,000. (§ 1202.4, subd. (b)(1).) Subdivision (b)(2) sets out a formula the court "may" use to determine the fine as "the product of the minimum fine pursuant to paragraph (1) multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted." (§ 1202.4, subd. (b)(2).) Here, applying the statutory formula results in a $15,000 restitution fine, an amount exceeding the $10,000 statutory maximum.[5] The probation department recommended the maximum $10,000 fine, but the court imposed a $9,000 fine.

Parker made no effort to show the four factors—his culpability, the relationship between the harm and the penalty, and the penalties imposed in similar statutes, and his ability to pay—militate against imposing the $9,000 fine. (*Pack-Ramirez, supra*, 56 Cal.App.5th at p. 861; *Kopp, supra*, 38 Cal.App.5th at p. 97 [judgment presumed correct; defendant has burden to demonstrate error through meaningful legal analysis].) Parker has not met his burden to show the $9,000 fine violates either the federal or state constitutions' proscriptions against excessive fines.

---

[5] The minimum $300 fine multiplied by Parker's 10-year sentence, multiplied by his five felony convictions equals $15,000.

## DISPOSITION

We conditionally reverse the judgment and the orders denying appellant's motions to quash and traverse the warrant. We remand the matter to the trial court with instructions to hold a new hearing on appellant's *Hobbs* motion, following proper *Hobbs* procedures. If, after said in camera hearing and any related proceedings, the court again grants the motions to quash and traverse the warrant, the court shall reinstate the judgment. If the court unseals portions of the affidavit, it must end the *Hobbs* hearing and give appellant the option to renew his motions to quash and traverse the warrant.

McCONNELL, P. J.

I CONCUR:

DATO, J.

9

CASTILLO, J., Concurring.

I join the majority in its entirety. I write separately, however, to respectfully urge the California Supreme Court or the Legislature to reconsider the procedure adopted in *People v. Hobbs* (1994) 7 Cal.4th 948 (*Hobbs*) to determine whether a sealed search warrant or wiretap is adequately supported by probable cause. *Hobbs*' nonadversarial procedure inadequately protects the constitutional rights of criminal defendants, as shown here.

The court below executed an order authorizing a wiretap of a telephone number associated with Parker and sealed in full the supporting affidavit. The People admit Parker was arrested "[a]s a result of the wiretap investigation and accompanying surveillance." In addition, ten search warrants issued, largely based on evidence obtained through the wiretap. The affidavits supporting those search warrants were redacted in full, thus depriving Parker of access to the information establishing probable cause. Parker's motion to quash and traverse the wiretap and suppress evidence was denied following an in camera examination of the wiretap materials—at which neither he nor his counsel was present. Parker thus had—and still has—no access to *any* of the underlying information that established probable cause for the investigation resulting in his conviction.

Under *Hobbs*, if a defendant moves to quash or traverse a search warrant or wiretap supported by a partly or fully sealed affidavit, the court must examine the affidavit to decide whether it establishes a need to maintain the informant's confidentiality. (*Hobbs*, 7 Cal.4th at pp. 971–972 (lead opn. of Lucas, C.J.).) It does so in camera, with the defendant and defense counsel excluded but the prosecutor permitted to attend. (*Id.* at p. 973.) If the court finds sealing necessary, it must then determine "whether

the extent of sealing is necessary to avoid revealing the informant's identity." (*Id.* at p. 972.) "Any portions of the sealed materials which, if disclosed, would not reveal or tend to reveal the informant's identity *must* be made public and subject to discovery by the defense." (*Id.* at p. 963, italics added.) The court also must "examine the affidavit for possible inconsistencies or insufficiencies regarding the showing of probable cause[ ] and inform the prosecution of the materials or witnesses it requires" to do so. (*Id.* at p. 973.)

This case aptly illustrates the pitfalls of *Hobbs*' nonadversarial procedure, many of which Justice Mosk highlighted in his compelling dissent. (*Hobbs*, 7 Cal.4th at pp. 977–987 (dis. opn. of Mosk, J.).) Ultimately, despite their good intentions and through no fault of their own, judges are ill-equipped to fulfill the demanding role *Hobbs* contemplates. As Justice Mosk noted, "judges do not commonly assume" the task of "formulating allegations and promulgating discovery requests," as *Hobbs* essentially requires them to do to probe the sufficiency of probable cause. (*Id.* at p. 985.) Further, because a judge " 'has no acquaintance with the information that may contradict the good faith and reasonable basis of the affiant's allegations,' " the judge cannot effectively evaluate the potential for material misrepresentations. (*Id.* at p. 986, quoting *Franks v. Delaware* (1978) 438 U.S. 154, 169.) Often, as here, the *Hobbs* procedure is overseen by the same judge who authorized the wiretap in the first place, raising the possibility of unconscious confirmation bias. And overburdened trial courts simply lack the resources to scour what can sometimes amount to hundreds of pages to decide word by word what must be sealed or redacted and what need not be.

I am certain judges presiding over *Hobbs* proceedings endeavor to thoroughly fulfill their obligations to balance criminal defendants' Fourth

2

and Sixth Amendment rights against the public interest in protecting valued informants. Yet in practice, for the reasons noted above, the procedure can unacceptably fall short.

Such was the case here. The trial court found sealing the affidavit "necessary to protect the identity of the informant or informants." But it also found "there was sufficient probable cause for the issuance of the warrant, *both with and without the informants*, based on the rather rigorous work put into this case." (Italics added.) If the wiretap relied on information provided by non-informant sources, why were those portions of the supporting affidavit not provided to Parker?

There are better ways to protect the competing interests of the public and the criminal defendant. Justice Mosk identified several in his dissent, namely: (1) appointing independent counsel to represent the defendant during the in camera proceeding, or (2) allowing defense counsel, but not the defendant, to participate in the in camera proceeding subject to an enforceable order not to disclose the evidence. (*Hobbs*, 7 Cal.4th at p. 983, fn. 5 (dis. opn. of Mosk, J.).) With either of these options, the prosecution could reduce to some extent the burden on the court by submitting proposed redactions contemporaneously with any motion to seal, which would assist the court in deciding what information may need to remain confidential.

Another alternative to the *Hobbs* procedure Justice Mosk suggested is to have law enforcement "perform additional investigative work to confirm the confidential informer's information" so the wiretap affidavit would have "its basis in both the informer's information—which the court could seal—and the police's corroborating information"—which defendant and defense counsel could receive. (*Hobbs*, 7 Cal.4th at p. 982–983 (dis. opn. of Mosk, J.).)

In accordance with this alternative, the affidavit here contained information supplied by and about one or more confidential informants, yet there was "sufficient probable cause for the issuance of the warrant" even absent that information "based on the rather rigorous work put into this case." Yet the court did not consider whether and to what extent any portions of the affidavit not relating to confidential source(s) could have been properly unsealed—a step *Hobbs* recognizes as necessary to protect a criminal defendant's interests. (*Hobbs*, 7 Cal.4th at p. 972 (lead opn. of Lucas, C.J.).) This troubling error almost certainly would not have occurred had Parker's interests been represented by counsel rather than the trial court during the in camera proceeding.

Because this case highlights how the *Hobbs* procedure inadequately protects criminal defendants' constitutional rights, I strongly encourage the Supreme Court or Legislature to consider alternatives that strike a more appropriate balance "between the public need to protect the identities of confidential informants[ ] and a criminal defendant's right of reasonable access to information upon which to base a challenge to the legality of a search warrant." (*Hobbs*, 7 Cal.4th at p. 957 (lead opn. of Lucas, C.J.).) Justice Mosk identified several possibilities in his dissent, as noted above, and there are surely others. The state and the courts must ensure criminal defendants have the right to a fair trial. *Hobbs* falls short of doing so.

CASTILLO, J.

4